UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------- x
ALFREDO ANDRADE SOLIS, *on behalf of himself* :
*and others similarly situated*,                      :
                                                                   :
                                           Plaintiff,   :            REPORT &
                                                                   :            RECOMMENDATION
          -against-                                        :
                                                                   :            23-CV-1707 (ENV)(MMH)
TROPICAL RESTAURANT BAR INC., 88-18     :
TROPICAL RESTAURANTE CORP., JAIME      :
ANTONIO PESANTEZ, and JAIME ILLESCAS  :
*(*a/k/a Jimmy Illescas),                             :
                                                                   :
                                           Defendants.   :
                                                                   :
---------------------------------------------------------------- x
**MARCIA M. HENRY**, United States Magistrate Judge:

  Plaintiff Alfredo Andrade Solis, on behalf of himself and others similarly situated,

brings this wage and hour "collective" action against Defendants Tropical Restaurant Bar Inc.

("Tropical Restaurant"), 88-18 Tropical Restaurante Corp. ("88-18 Tropical"), Jaime Antonio

Pesantez, and Jaime Illescas (a/k/a Jimmy Illescas), alleging violations of the Fair Labor

Standards Act (the "FLSA"), 29 U.S.C. §§ 201 *et seq.*, and the New York Labor Law (the

"NYLL"), N.Y. Lab. Law §§ 190 *et seq.*  (*See generally* Compl., ECF No. 1.)[1]  Before the

Court is Plaintiff's motion for default judgment pursuant to Federal Rule of Civil Procedure

55(b) and Local Civil Rule 55.2(b).  (*See generally* Mot., ECF No. 20.)[2]  The Honorable Eric

N. Vitaliano referred the motion for report and recommendation.

---

[1] All citations to documents filed on ECF are to the ECF document number and pagination in the
ECF header unless otherwise noted.  Citations to the Local Civil Rules are to the Rules effective
October 15, 2021.

[2] Plaintiff submits a notice of the motion (Mot., ECF No. 20); a memorandum of law (Mem., ECF
No. 21); Jason Mizrahi's declaration in support (Mizrahi Decl., ECF No. 22) and its six exhibits,

For the reasons set forth below, the Court respectfully recommends that Plaintiff's motion for default judgment should be **denied** as to 88-18 Tropical, Pesantez, and Illescas and **granted in part** as follows: (1) a default judgment should be entered against Tropical Restaurant, and (2) Plaintiff should be awarded damages as set forth herein.

## I.      BACKGROUND

### A.      Facts

The following facts are taken from the Complaint, whose well-pleaded allegations are assumed to be true, and the uncontroverted documentary evidence submitted in support of the motion. *Bricklayers & Allied Craftworkers Loc. 2 v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 187–90 (2d Cir. 2015).

Tropical Restaurant and 88-18 Tropical (the "Corporate Defendants") are New York domestic corporations with their principal place of business located at 88-18 Jamaica Avenue, Woodhaven, New York 11421 (the "Jamaica Avenue Address").  (Compl., ECF No. 1 ¶¶ 10, 16.)   At all relevant times, Pesantez and Illescas (the "Individual Defendants") were the "owner[s], officer[s], and/or agent[s]" of the Corporate Defendants who "determined the wages and compensation of employees, including Plaintiff, established the schedules of employees, maintained employee records, and had the authority to hire and fire employees." (*Id.* ¶¶ 23–25, 28–30.)  Plaintiff was employed by Defendants as "a waiter, bartender, busboy and general worker" from approximately March 2020 to February 28, 2023.  (*Id.* ¶ 44.)

---

including a proposed default judgment order (Mizrahi Decl., Exs. A–F, ECF Nos. 22-1 to 22-6); Plaintiff's unsigned affidavit (Pl. Aff., ECF No. 23); and affidavit of service of the motion papers. (Aff. of Service, ECF No. 24.)  Further, Plaintiff submits a signed version of his affidavit.  (Pl. Rev. Aff., ECF No. 28-1.)

Plaintiff claims that throughout his employment, he worked "four (4) to six (6) days per week: from approximately 12:00 p.m. to 11:00 p.m. or 12:00 a.m. (*i.e.*, 11 or 12 hours per day) for a total period of approximately 44 to 72 hours during each of the weeks, respectively." (*Id.* ¶ 46.)  Plaintiff was paid a "fixed salary of $40 per day."  (*Id.* ¶ 47.)  Plaintiff alleges that even though he was required to work over forty hours per week, he "never received an overtime premium of one and one-half times his regular rate of pay for those hours."  (*Id.* ¶ 55.)  Plaintiff also claims that Defendants maintained a policy and practice of unlawfully appropriating Plaintiff's tipped wages.  (*Id.* ¶ 48.)  Specifically, Defendants required Plaintiff to distribute a percentage of tips to non-tipped employees (*i.e.*, managers) who should not have taken a share of Plaintiff's tips.  (*Id.* ¶¶ 49–50.)  Further, Plaintiff was not paid spread of hours pay at the minimum wage rate for each day his shift exceeded ten hours.  (*Id.* ¶ 57.)  Plaintiff claims that Defendants did not keep track of Plaintiff's time worked and did not provide any wage statements or wage notices.  (*Id.* ¶¶ 60–61.)

## B.   Procedural History

Plaintiff initiated this action on March 6, 2023.  (*See generally id.*)  Plaintiff purportedly served the summons and Complaint on Defendants in March 2023 and April 2023.  (Affs. of Service, ECF Nos. 8–9, 12–13.)  After Defendants failed to answer or otherwise respond to the Complaint, the Clerk of Court entered default against them.  (Entry of Default, ECF Nos. 11, 15, 17.)

Plaintiff moved for default judgment on October 2, 2023, seeking unpaid minimum wages, unpaid overtime wages, misappropriated tips, spread-of-hours pay, liquidated damages, pre-judgment interest, attorneys' fees, and costs.  (Mem., ECF No. 21 at 15–23; *see* Mizrahi

Decl., Ex. F (Proposed Order), ECF No. 22-6 at 5–6.)  Judge Vitaliano referred the motion for

report and recommendation.  (Oct. 3, 2023 Order Ref. Mot.)

In April 2024, attorney E. Dubois Raynor, Jr. moved to appear *pro hac vice* on behalf

of all Defendants.  (Mot., ECF No. 25.)  The Court denied the motion for failure to comply

with Local Civil Rule 1.3(c) and granted leave to renew by May 14, 2024.  (Apr. 30, 2024

Order.)  After counsel ignored this directive, the Court *sua sponte* extended the deadline.  (June

4, 2024 Order.)  Instead of submitting a revised motion, counsel moved for "reconsideration,"

requesting the Court to accept his overdue, amended application that did not comply with the

Local Rules.  (Mot. for Recons., ECF No. 26.)[3]  The Court denied the motion and again

directed counsel to resubmit his application, this time by July 11, 2024.  (June 20, 2024 Order.)

To date, no defense counsel has appeared, and Defendants have not responded to Plaintiff's

motion.

## II.     STANDARD FOR DEFAULT JUDGMENT

Rule 55 of the Federal Rules of Civil Procedure dictates a two-step process for a party

to obtain a default judgment.  Fed. R. Civ. P. 55(a)-(b); *New York v. Green*, 420 F.3d 99, 104

(2d Cir. 2005); *Nam v. Ichiba Inc.*, No. 19-CV-1222 (KAM), 2021 WL 878743, at *2 (E.D.N.Y

Mar. 9, 2021).  *First*, when a party uses an affidavit or other proof to show that a party has

---

[3] In this submission, for the first time, counsel alerted the Court to another action against 88-18
Tropical and Illescas alleging wage and hour violations, *Rodriguez v. 88-18 Tropical Restaurant
Corp. et al.*, 21-CV-3573 (ENV)(VMS) (E.D.N.Y.), and the Corporate Defendants' now-
dismissed bankruptcy actions that led to a bankruptcy stay in *Rodriguez*. *See In Re 88-18 Tropical
Corp. d/b/a Tropical Restaurant*, 23-42796 (NHL) (Bankr. E.D.N.Y. 2024); *In Re 88-18 Tropical
Corp. d/b/a Tropical Restaurant*, 23-44446 (NHL) (Bankr. E.D.N.Y. 2024).  The Court takes
judicial notice of these bankruptcy proceedings, which were filed while this action was pending.
*See id.*  However, each action was dismissed because the Corporate Defendants failed to appear
with counsel, and attorney Raynor's *pro hac vice* motion was denied.  To date, the Corporate
Defendants have not filed any additional bankruptcy petitions.

"failed to plead or otherwise defend" against an action, the clerk shall enter a default.  Fed. R. Civ. P. 55(a).  If a claim is for "a sum certain or a sum that can be made certain by computation," the clerk can enter judgment.  Fed. R. Civ. P. 55(b)(1).  *Second*, and "[i]n all other cases, the party must apply to the court for a default judgment."  Fed. R. Civ. P. 55(b)(2); *Victoriano Gonzalez v. Victoria G's Pizzeria LLC*, No. 19-CV-6996 (DLI)(RER), 2021 WL 6065744, at *5 (E.D.N.Y. Dec. 22, 2021).  To "enter or effectuate judgment" the Court is empowered to "(A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter."  Fed. R. Civ. P. 55(b)(2).

The decision to grant or deny a default motion is "left to the sound discretion of a district court."  *Shah v. New York State Dep't of Civ. Serv.*, 168 F.3d 610, 615 (2d Cir. 1999) (cleaned up).  The Court must draw all reasonable inferences in favor of the movant.  *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009).  However, "'[a] default . . . only establishes a defendant's liability if those allegations are sufficient to state a cause of action against the defendant.'"  *Double Green Produce, Inc. v. F. Supermarket Inc.*, 387 F. Supp. 3d 260, 265 (E.D.N.Y. 2019) (quoting *Taizhou Zhongneng Imp. & Exp. Co., Ltd. v. Koutsobinas*, 509 F. App'x 54, 56 (2d Cir. 2013)).

III.   **JURISDICTION AND VENUE**

A.   **Subject Matter Jurisdiction**

"Before granting a motion for default judgment, a court must first determine whether it has subject matter jurisdiction over the action."  *Mt. Hawley Ins. Co. v. Pioneer Creek B LLC*, No. 20-CV-150 (ALC), 2021 WL 4427016, at *3 (S.D.N.Y. Sept. 27, 2021) (citing *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 125–27 (2d Cir. 2011)).  The Court has

original jurisdiction over Plaintiff's FLSA claims pursuant to 29 U.S.C. § 216(b).  28 U.S.C. § 1331.  The Court may also exercise supplemental jurisdiction over Plaintiff's NYLL claims because they arise out of the same facts and circumstances as the FLSA claims.  28 U.S.C. § 1367(a); *Perez v. 50 Food Corp.*, No. 17-CV-7837 (AT)(BCM), 2019 WL 7403983, at *4 (S.D.N.Y. Dec. 4, 2019), *adopted by* 2020 WL 30344 (S.D.N.Y. Jan. 2, 2020).

### B.      Personal Jurisdiction

"[B]efore a court grants a motion for default judgment, it may first assure itself that it has personal jurisdiction over the defendant."  *Sinoying Logistics Pte Ltd. v. Yi Da Xin Trading Corp.*, 619 F.3d 207, 213 (2d Cir. 2010).  The three requirements for personal jurisdiction are: (1) the plaintiff's service of process upon the defendant must have been procedurally proper; (2) there must be a statutory basis for personal jurisdiction that renders such service of process effective; and (3) the exercise of personal jurisdiction must comport with constitutional due process principles.  *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59–60 (2d Cir. 2012) (subsequent history omitted).

### 1.      Service of Process

*First*, service of process was proper for Tropical Restaurant and the Individual Defendants.  Plaintiff properly served Tropical Restaurant by delivering copies of the Summons and Complaint to the New York Secretary of State.  (Aff. of Service, ECF No. 8). This method of service on a corporation complies with federal and state procedural rules.  Fed. R. Civ. P. 4(h)(1)(A) & 4(e)(1); N.Y. C.P.L.R. § 311(a)(1); N.Y. Bus. Corp. Law § 306(b)(1). Plaintiff also properly served the Individual Defendants by delivering a copy of the Summons and Complaint to a person of "suitable age and discretion" at their actual place of business and by mailing a copy of process to the Individual Defendants at the same location.  (Affs. of

Service, ECF Nos. 8, 13).  These service methods follow federal and state rules for service on individuals.  Fed. R. Civ. P. 4(e)(1); N.Y. C.P.L.R. § 308(2).

On the other hand, the Court does not have personal jurisdiction over 88-18 Tropical. A corporation must be served, *inter alia*, "by delivering a copy of the summons to an officer, managing or general agent, or any other agent authorized by appointment or by law to receive service of process," or by a manner prescribed by Rule 4(e)(1).  Fed. R. Civ. P. 4(h)(1)(B).  In turn, Rule 4(e)(1) states that a party may effectuate service by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made."  Fed. R. Civ. P. 4(e)(1).  In New York, in lieu of service on the Secretary of State, a corporation must be served by delivering the summons "to an officer, director, managing or general agent, or cashier or assistant cashier or to any other agent authorized by appointment or by law to receive service."  N.Y. C.P.L.R. § 311(a)(1). Plaintiff's service affidavit for 88-18 Tropical states that service was effectuated on "Lianna Doe" at the Jamaica Avenue Address and that "[d]eponent knew . . . said individual to be General Agent" of the corporation described in the summons.  (Aff. of Service, ECF No. 12.) The affidavit does not describe the basis of the process server's knowledge, and "[t]his Court also cannot find on the face of the affidavit any other basis to conclude that service of process was proper" on Doe. *Yoon v. Toothsavers Dental Lab'y, Inc.*, No. 19-CIV-2283 (ERK)(VMS), 2020 WL 13580466, at *5 (E.D.N.Y. June 22, 2020), *adopted by* Order Adopting R. & R., *Yoon v. Toothsavers Dental Lab'y, Inc.*, No. 19-CIV-2283 (ERK)(VMS) (E.D.N.Y. July 27, 2020).  Accordingly, the Court concludes that the affidavit of service is not entitled to the presumption that 88-18 Tropical was properly served, and the Court does not have personal

jurisdiction over this defendant.  Based on the foregoing, the Court respectfully recommends that the motion for default judgment should be **denied** as to 88-18 Tropical.

### 2.    General Jurisdiction

The Court will continue its analysis with respect to Tropical Restaurant and the Individual Defendants.

The Court has general jurisdiction over Tropical Restaurant, because it is a New York corporation doing business in New York.  *Francis v. Ideal Masonry, Inc.*, No. 16-CV-2839 (NGG)(PK), 2018 WL 4292171, at *3 (E.D.N.Y. Aug. 3, 2018), *adopted by* 2018 WL 4288625 (E.D.N.Y. Sept. 7, 2018) (citing *Daimler AG v. Bauman*, 134 S. Ct. 746, 760 (2014) & N.Y. C.P.L.R. § 301).  Though Plaintiff does not allege the Individual Defendants' domiciles, the Court would have general jurisdiction over them if they were domiciled in New York.  *See Francis*, 2018 WL 4292171 at *3.  If they were not, "a federal court in New York may exercise personal jurisdiction over a non-resident defendant based either on general jurisdiction, under C.P.L.R. § 301, or specific jurisdiction, under C.P.L.R. § 302."  *Weitsman v. Levesque*, No. 3:17-CV-727 (MAD)(DEP), 2019 WL 7503022, at *3 (N.D.N.Y. Jan. 11, 2019) (cleaned up).  As alleged, the Individual Defendants conduct business within the state and are "owner[s], officer[s] and/or agent[s] of [Tropical Restaurant]," (Compl., ECF No. 1 ¶¶ 23, 28), which sufficiently establishes specific jurisdiction.  *Id.*

### 3.    Due Process

*Finally*, "[s]ince jurisdiction is proper for [Tropical Restaurant and the Individual Defendants] under [the] CPLR, the Court's exercise of personal jurisdiction comports with constitutional due process."  *Francis*, 2018 WL 4292171, at *3.  Those defendants therefore "ha[ve] sufficient contacts with the forum state to justify the court's exercise of personal

jurisdiction" and "it is reasonable to exercise personal jurisdiction under the circumstances of the particular case." *Licci*, 673 F.3d at 60 (citation omitted).

For the foregoing reasons, the Court has personal jurisdiction over Tropical Restaurant and the Individual Defendants.

## C.    Venue

"A civil action may be brought in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2).  Venue is proper in this district because the failure to pay wages alleged in the Complaint occurred during Plaintiff's employment in Woodhaven, New York.  (Compl., ECF No. 1 ¶¶ 6, 10.)

## IV.    PROCEDURAL COMPLIANCE

### A.    Local Civil Rules

Plaintiff has demonstrated that he took the required procedural steps to provide notice and to comply with the requirements for default judgment motions as to Tropical Restaurant, but not as to the Individual Defendants. *See D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 109 n.2 (2d Cir. 2006) ("A district court has broad discretion to determine whether to overlook a party's failure to comply with local rules.").

Generally, Plaintiff includes a notice of motion, a memorandum of law in support of the motion, a copy of the Complaint, and a proposed judgment.  Local Civ. R. 7.1(a)(1)–(2), 55.2(b)(2)–(3).  For Tropical Restaurant, Plaintiff also submits a copy of the Clerk's certificate of default, proof of service of the Complaint, and proof of mailing the motion.  Local Civ. R. 55.2(b)(1), 55.2(b)(3), 55.2(c).  Accordingly, the Court finds that Plaintiff has complied with this district's Local Rules to provide adequate notice to Tropical Restaurant. *See Perry v. High*

*Level Dev. Contracting & Sec. LLC*, No. 20-CV-2180 (AMD)(PK), 2022 WL 1018791, at *4 (E.D.N.Y. Mar. 16, 2022), *adopted by* 2022 WL 1017753 (E.D.N.Y. Apr. 5, 2022).

On the other hand, Plaintiff did not fully comply with Local Rules as to the Individual Defendants. *First*, Plaintiff failed to append a copy of the Clerk's certificate of default against the Individual Defendants. *See* Local Civ. R. 55.2(b)(1). *Second*, Plaintiff's proof of service of the default motion papers does not sufficiently show that Plaintiff mailed the papers to the Individual Defendants at their last known residence. *See* Local Civ. R. 55.2(c). Plaintiff's proof of service merely shows that the papers were mailed to the Jamaica Avenue Address, which is Tropical Restaurant's business address, without any evidence that this address was also the Individual Defendants' last known residence. (*See* Aff. of Service, ECF No. 24.) "While service of the Complaint at a business address is sufficient for [the Individual Defendants], when the plaintiff seeks default against [those individuals], the motion for default judgment must be served at the person's last known residence." *Allstate Ins. Co. v. Abramov*, No. 16-CV-1465 (AMD)(SJB), 2019 WL 1177854, at *3 (E.D.N.Y. Feb. 21, 2019), *adopted by*, 2019 WL 1172381 (E.D.N.Y. Mar. 13, 2019) (denying default judgment because the motion papers were mailed to the individual defendants' business address). Accordingly, the Court finds that Plaintiff did not comply with the Local Rules as to the Individual Defendants.

For these reasons, the Court respectfully recommends that the motion for default judgment against the Individual Defendants should be **denied,** and will consider the motion only with respect to Tropical Restaurant.[4]

---

[4] Even assuming compliance with the Local Civil Rules, Plaintiff fails to comply with the Servicemembers Civil Relief Act ("SCRA") as to the Individual Defendants. Pursuant to the SCRA, "[i]n a default judgment action, a plaintiff is required to file an affidavit that states whether the defendant is serving in the military and must show necessary facts in support of the affidavit."

## V.    DEFAULT JUDGMENT FACTORS

Courts use the same three-factor test used to set aside a default judgment to determine whether to grant a default judgment.  *See Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993); *Avail 1 LLC v. Latief*, No. 17-CV-5841 (FB)(VMS), 2020 WL 5633869, at *4 (E.D.N.Y. Aug. 14, 2020).  Specifically, courts examine: "(1) whether the defendant's default was willful; (2) whether the defendant has a meritorious defense to the plaintiff's claims; and (3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment."  *Courchevel 1850 LLC v. Rodriguez*, No. 17-CV-6311 (MKB),

---

*Lopez v. Metro & Graham LLC*, No. 22-CV-332 (CBA)(RER), 2022 WL 18809176, at *5 (E.D.N.Y. Dec. 16, 2022), *adopted by* 2023 WL 2140418 (E.D.N.Y. Feb. 21, 2023) (citing 50 U.S.C. § 3931(b)(1)).  "The non-military affidavit must be based not only on an investigation conducted after the commencement of an action or proceeding but also after a default in appearance by the party against whom the default [judgment] is to be entered."  *Tenemaza v. Eagle Masonry Corp.*, No. 20-CIV-452 (AMD)(VMS), 2021 WL 8317120, at *5 (E.D.N.Y. July 22, 2021) (citing *Pruco Life Ins. Co. of New Jersey v. Est. of Locker*, No. 12 Civ. 882 (ENV) (RML), 2012 WL 3062754, at *1 (E.D.N.Y. July 23, 2012)).  Failure to comply with these requirements is sufficient to deny default judgment.  *Windward Bora, LLC v. Ortiz*, No. 21-CV-4154 (MKB)(JMW), 2022 WL 3648622, at *5 (E.D.N.Y. July 5, 2022), *adopted by* 2022 WL 3647586 (E.D.N.Y. Aug. 24, 2022).  Here, while Plaintiff investigated whether the Individual Defendants were serving in the military after the commencement of the action, "Plaintiff[] failed to file an affidavit stating whether the Individual Defendants were in military service at the time Plaintiff[] moved for default judgment."  *Guanglei Jiao v. Shang Shang Qian Inc.*, No. 18-CIV-5624 (ARR)(VMS), 2020 WL 6370148, at *9 (E.D.N.Y. Aug. 11, 2020), *adopted by* 2020 WL 5105063 (E.D.N.Y. Aug. 31, 2020).  The record before the Court does not reflect any evidence that Plaintiff attempted to conduct such investigation before seeking default judgment against the Individual Defendants.  "Plaintiff's burden in this regard is not a heavy one, as the Department of Defense maintains a Servicemembers Civil Relief Act website for the purposes of, among other things, determining whether an individual is on active duty."  *Pinela Jurado v. Sabor Hispano, Inc.*, No. 20-CIV-1104 (RPK)(VMS), 2021 WL 11690645, at *7 (E.D.N.Y. Aug. 5, 2021); *see also Morales v. Los Cafetales Rest. Corp.*, No. 21-CV-1868 (AMD)(RER), 2023 WL 375647, at *5 n.3 (E.D.N.Y. Jan. 3, 2023) ("It is possible to obtain a report certifying active-duty military status through the Servicemembers Civil Relief Act website."), *adopted by* 2023 WL 375642 (E.D.N.Y. Jan. 24, 2023).  *See also* "Welcome to the Official Servicemembers Civil Relief Act (SCRA) Website," https://scra.dmdc.osd.mil/scra/#/home (website for free requests) (last visited Sept. 19, 2024).

2019 WL 2233828, at *3 (E.D.N.Y. May 22, 2019) (citing *Pecarsky v. Galaxiworld.com Ltd.*, 249 F.3d 167, 170–71 (2d Cir. 2001)).

Here, all three factors weigh in Plaintiff's favor. *First*, despite defense counsel's attempt to appear, "[Tropical Restaurant's] non-appearance and failure to respond to the Complaint or otherwise appear indicate willful conduct." *See Tambriz v. Taste & Sabor, LLC*, 577 F. Supp. 3d 314, 321 (E.D.N.Y. 2021). "[T]he court may find a default to have been willful where the conduct of counsel or the litigant was egregious and was not satisfactorily explained." *Pennacchio v. Powers*, No. 05-CV-985 (RRM)(RML), 2010 WL 3767141, at *3 (E.D.N.Y. Aug. 9, 2010) (citing *SEC v. McNulty*, 137 F.3d 732, 738 (2d Cir.1998)). The Court can determine whether to "impute an attorney's willfulness to the client," unless the client demonstrates that he or she made diligent efforts to monitor the attorney's conduct. *Id.* Here, Tropical Restaurant, despite being aware of this litigation, has not attempted to obtain another attorney to appear on its behalf or to vacate the entry of default against it. *See, e.g.*, *Fermin v. Las Delicias Peruanas Rest.*, 93 F. Supp. 3d 19, 32 (E.D.N.Y. 2015). Under these circumstances, the Court finds that Tropical Restaurant's conduct demonstrates willfulness.

*Second*, without an answer to the Complaint, "the Court cannot determine whether a defendant has a meritorious defense and granting a default judgment is favored under those circumstances." *Avedana v. Casa Ofelia's Bakery LLC*, No. 20-CV-2214 (DG)(AKT), 2021 WL 4255361, at *4 (E.D.N.Y. Aug. 19, 2021), *adopted by* 2021 WL 4248857 (E.D.N.Y Sept. 17, 2021).

*Third*, Plaintiff will be prejudiced if the motion for default judgment is denied because "there are no additional steps available to secure relief in this Court." *Reyes v. Tacos El Gallo*

*Giro Corp.*, No. 20-CV-3474 (EK)(SJB), 2022 WL 940504, at *2 (E.D.N.Y. Jan. 25, 2022) (citation omitted), *adopted by* 2022 WL 939769 (E.D.N.Y. Mar. 29, 2022).

Based on the foregoing, entry of default judgment is permissible as to Tropical Restaurant.

## VI.   LIABILITY

### A.   Statute of Limitations

"The limitations period for FLSA claims is two years, 'except that a cause of action arising out of a willful violation may be commenced within three years.'" *Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315, 320 (2d Cir. 2021) (quoting 29 U.S.C. § 255(a)). "When a defendant defaults, the violation is considered willful and the three-year statute of limitations applies." *Esquivel v. Lima Rest. Corp.*, No. 20-CV-2914 (ENV)(MMH), 2023 WL 6338666, at *5 (E.D.N.Y. Sept. 29, 2023), *adopted by* Order Adopting R. & R., *Esquivel v. Lima Rest. Corp.*, No. 20-CV-2914 (ENV)(MMH) (E.D.N.Y. Nov. 30, 2023).  In contrast, the NYLL establishes a six-year limitations period for wage claims.  N.Y. Lab. Law §§ 198(3), 663(3).  The statute of limitations begins to run when an employee begins to work for the employer.  *Esquivel*, 2023 WL 6338666, at *5.  Plaintiff commenced this action on March 6, 2023.  (Compl., ECF No. 1.)  Plaintiff began working for Tropical Restaurant in March 2020.  (*Id.* ¶ 7.)  In light of Tropical Restaurant's default, therefore, Plaintiff may recover under the FLSA for any claims starting on March 6, 2020, and under the NYLL for all claims that accrued since the beginning of his employment.

### B.   FLSA Coverage

To establish a minimum wage or overtime claim under the FLSA, the "plaintiff must prove the following: (1) the defendant is an employer subject to [the] FLSA; (2) the plaintiff

is an 'employee' within the meaning of [the] FLSA; and (3) the employment relationship is not exempted from the FLSA." *Payamps v. M & M Convenience Deli & Grocery Corp.*, No. 16-CV-4895 (LDH)(SJB), 2019 WL 8381264, at *6 (E.D.N.Y. Dec. 9, 2019) (cleaned up); 29 U.S.C. §§ 206(a), 207(a).

## 1.    Employer Subject to the FLSA

The Complaint alleges that Tropical Restaurant was Plaintiff's employer within the meaning of the FLSA.  (Compl., ECF No. 1 ¶¶ 12–13.)  An employer includes, "any person [*e.g.*, an individual or a corporation] acting directly or indirectly in the interest of an employer in relation to an employee."  29 U.S.C. § 203(a), (d).  "For employees to be covered by the FLSA, they must show either that their employer was an enterprise engaged in interstate commerce or that their work as employees regularly involved them in interstate commerce." *Marine v. Vieja Quisqueya Rest. Corp.*, No. 20-CV-4671 (PKC)(RML), 2022 WL 17820084, at *3 (E.D.N.Y. Sept. 8, 2022), *adopted by* Order Adopting R. & R., *Marine v. Vieja Quisqueya Rest. Corp.*, No. 20-CV-4671 (PKC) (E.D.N.Y. Sept. 23, 2022); 29 U.S.C. §§ 206, 207.  These two methods of establishing FLSA coverage are known as "enterprise coverage" and "individual coverage," respectively.  *Sanchez v. Ms. Wine Shop*, 643 F. Supp. 3d 355, 367 (E.D.N.Y. 2022).

The enterprise coverage test considers whether the employer has employees "engaged in commerce or in the production of goods for commerce," *i.e.*, it "has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person" and has an "annual gross volume of sales made or business done . . . not less than $500,000."  29 U.S.C. § 203(s)(1)(A)(i)–(ii); *Perry*, 2022 WL 1018791, at *6.  Here, the Complaint states, in conclusory fashion, that Tropical Restaurant "(i) has had

and continues to have employees engaged in commerce or in the production of goods and services for commerce and handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and (ii) has had and continues to have an annual gross volume of sales of not less than $500,000.00." (Compl., ECF No. 1 ¶¶ 11–12.) Plaintiff also alleges that he was employed at a restaurant in Queens. (*See id.* ¶ 6.)

"On default, a plaintiff's allegations are sufficient to subject a defendant to FLSA liability as long as one may reasonably infer that a business was an 'enterprise engaged in commerce.'" *Alvarado v. J.A Vasquez Landscaping Corp.*, No. 20-CV-4005 (HG)(SJB), 2023 WL 2542702, at *5 (E.D.N.Y. Feb. 14, 2023) (quoting *Fermin*, 93 F. Supp. 3d at 32), *adopted by* Order Adopting R. & R., *Alvarado v. J.A Vasquez Landscaping Corp.*, No. 20-CV-4005 (HG)(SJB) (E.D.N.Y. Mar. 16, 2023); *see also Castro v. Hyper Structure Corp.*, No. 21-CV-1391 (ENV)(JRC), 2022 WL 2467242, at *8 (E.D.N.Y. Mar. 7, 2022) (collecting cases). *But see Salamanca v. ABC Corp.*, No. 19-CV-1334 (WFK)(SIL), 2021 WL 3275902, at *5 (E.D.N.Y. July 15, 2021), *adopted by* 2021 WL 3269089 (E.D.N.Y. July 30, 2021) (in default judgment motion, finding no enterprise coverage under the FLSA, but permitting NYLL claims to proceed) ("Vague allegations, which simply parrot the statutory requirements, to support a judgment would in effect render the interstate commerce element meaningless."). Plaintiff's factual allegation that he worked as a "waiter, bartender, busboy and general worker," (Compl., ECF No. 1 ¶ 44), (barely) establishes that "Tropical Restaurant" is a type of business that regularly engages in interstate commerce, for example, when he handles the "food, beverages, products, materials, and equipment utilized by the defendants." *See Marine*, 2022 WL 17820084, at *3 (citing *Newman v. W. Bar & Lounge, Inc.*, No. 20-CV-1141, 2021 WL 2401176, at *5 (E.D.N.Y. June 11, 2021)); *Esquivel*, 2023 WL 6338666, at *6 (finding

enterprise coverage for a restaurant, in part because "the tools and goods required to operate a restaurant engaging in interstate commerce of more than $500,000 do not exclusively come from New York State."); *Fermin*, 93 F. Supp. 3d at 33 ("As a restaurant, it is reasonable to infer that [defendant] requires a wide variety of materials to operate, for example, foodstuffs, kitchen utensils, cooking vessels, cleaning supplies, paper products, furniture, and more . . . [and] that some of these materials moved or were produced in interstate commerce."). Therefore, it is reasonable to infer that Tropical Restaurant's supplies and products would have originated outside of New York.[5]  Accordingly, Plaintiff's allegations are sufficient to establish FLSA enterprise coverage.[6]

## 2.    Employee Subject to the FLSA

The FLSA defines an "employee" as "any individual employed by an employer."  29 U.S.C. § 203(e)(1).  "Two types of employees are covered: (1) 'employees who in any workweek [are] engaged in commerce or in the production of goods for commerce;' and (2)

---

[5] Notwithstanding this inference, "[t]he preferred practice would be to provide specific facts as to each element of [] Plaintiff's claim[s]." *Luna v. Gon Way Constr., Inc.*, No. 16-CV-1411(ARR)(VMS), 2017 WL 835321, at *5 n.2 (E.D.N.Y. Feb. 14, 2017), *adopted by* 2017 WL 835174 (E.D.N.Y. Mar. 2, 2017).

[6] Because the enterprise coverage test has been met, the Court need not address whether Plaintiff satisfies the individual coverage test.  However, the Court notes that Plaintiff could also establish FLSA protection under the individual coverage test.  "Individual coverage under the FLSA can be established where the employee is engaged in commerce or produced goods in commerce." *Sarr v. VEP Assocs. LLC*, No. 22-CV-4386 (ENV)(MMH), 2024 WL 1251600, at *3 (E.D.N.Y. Mar. 25, 2024) (cleaned up), *adopted by* Order Adopting R. & R., *Sarr v. VEP Assocs. LLC*, No. 22-CV-4386 (ENV)(MMH) (E.D.N.Y. Apr. 15, 2024).  "Employees are 'engaged in commerce' within the meaning of the [FLSA] when they are performing work involving or related to the movement of persons or things (whether tangibles or intangibles, and including information and intelligence) among several States or between any State and any place outside thereof." 29 C.F.R. § 779.103.  Further, "[a]n employee shall be deemed to have been engaged in the production of goods if such employee was employed in . . . handling . . . or in another manner working on such goods." 29 U.S.C. § 203(j). As noted, Plaintiff regularly handles kitchen utensils, cleaning supplies, and other products likely produced outside of, and transported to, New York.

employees who are 'employed in an enterprise engaged in commerce or in the production of goods for commerce.'" *Palaghita v. Alkor Cap. Corp.*, No. 19-CV-1504 (ARR)(RER), 2021 WL 4464121, at *9 (E.D.N.Y. Aug. 20, 2021), *adopted by* 2021 WL 4463483 (E.D.N.Y. Sept. 29, 2021) (quoting 29 U.S.C. § 207(a)(1)). The FLSA does not extend to employees who are exempt from its minimum wage and overtime requirements. *See* 29 U.S.C. § 213(a) (listing multiple exemptions).

Plaintiff alleges facts that establish, as a matter of law, that he is engaged in non-exempt employment under the FLSA. Specifically, Plaintiff alleges that he was employed as "a non-managerial employee" at Tropical Restaurant—specifically, "a waiter, bartender, busboy and general worker"—and that he is "an employee within the meaning of . . . the FLSA." (Compl., ECF No. 1 ¶¶ 7–8, 44.) Employment in positions with similar duties are not exempt from the FLSA. *See, e.g.*, *Fermin*, 93 F. Supp. 3d at 32 ("Plaintiffs' respective jobs as waiter, kitchen helper/food preparer, cook and dishwasher all constitute non-exempt employment under the FLSA"); *Esquivel*, 2023 WL 6338666, at *7 (stating that waiters and bartenders are non-exempt employees under the FLSA). Therefore, the Court does not find any basis for exempting Plaintiff's employment relationship from the FLSA's provisions.[7]

Accordingly, Plaintiff qualifies for the protections of the FLSA.

---

[7] Because Tropical Restaurant defaulted, it does not assert or offer any facts to support a finding that Plaintiff is a non-exempt employee. *See Dejesus v. HF Mgmt. Servs.*, LLC, 726 F.3d 85, 91 n.7 (2d Cir. 2013) ("A claim of exemption under the FLSA is an affirmative defense, and the employer bears the burden of proof in making any such claim.") (citing *Corning Glass Works v. Brennan*, 417 U.S. 188, 196 (1974) and *Martin v. Malcolm Pirnie, Inc.*, 949 F.2d 611, 614 (2d Cir. 1991)).

## C.    NYLL Coverage

To plead a NYLL claim, Plaintiff "must establish that [the] employment relationship with Defendants falls within the NYLL, which applies to 'any person employed for hire by an employer in any employment.'"  *Perry*, 2022 WL 1018791, at *7 (quoting N.Y. Lab. Law § 190).  "Under the New York Labor Law, the definition of employee and employer are nearly identical as those under the FLSA, though the NYLL does not require that a defendant achieve a certain minimum in annual sales or business in order to be subject to the law."  *Pelgrift v. 335 W. 41st Tavern Inc.*, No. 14-CV-8934 (AJN), 2017 WL 4712482, at *7 (S.D.N.Y. Sept. 28, 2017) (citing N.Y. Lab. Law §§ 651(5)-(6) and *Garcia v. Badyna*, No. 13-CV-4021 (RRM)(CLP), 2014 WL 4728287, at *6 (E.D.N.Y. Sept. 23, 2014)).  Additionally, "[u]nder the NYLL, an employee-employer relationship is established through the degree of control exercised by the purported employer over the employee."  *Brito v. Marina's Bakery Corp.*, No. 19-CV-828 (KAM)(MMH), 2022 WL 875099, at *8 (E.D.N.Y. Mar. 24, 2022) (cleaned up).  The Court has already determined that Tropical Restaurant is Plaintiff's employer within the meaning of the FLSA.  (*See* § VI.B.1, *supra*.)  "Because the NYLL's definition of 'employer' is coextensive with the FLSA's definition . . . [Tropical Restaurant is] Plaintiff's employer[] within the meaning of the NYLL" as well.  *Perry*, 2022 WL 1018791, at *7. Accordingly, Plaintiff qualifies for the protections of the NYLL.

## D.    Statutory Violations

In the Complaint, Plaintiff alleges that Tropical Restaurant violated the FLSA and NYLL provisions related to minimum wage, overtime wage, (Counts 1, 2, 3, and 4) and the NYLL provisions related to spread of hours pay, wage notices and wage statements, and unlawful deduction of tips (Counts 5, 6, 7, and 8).  (*See* Compl., ECF No. 1 ¶¶ 69–105.)  The

Complaint further alleges that Tropical Restaurant made unlawful deductions and required kickbacks from Plaintiff's wages, including tips (Count 9).  (Compl., ECF No. 1 ¶¶ 106–11 (citing 29 U.S.C. § 206(a) & 29 C.F.R. § 531.35).)  However, in the motion, Plaintiff primarily argues that Tropical Restaurant's tip sharing practices were unlawful under the NYLL.  (*See* Mem., ECF No. 21 at 18.)  "Plaintiff[] [does not elaborate on, or even mention, these deductions in [the] supporting memorandum or affidavits, nor [does he] appear to have included them in [his] damages computation. Thus, the Court considers Plaintiff[] to have abandoned [his] ninth claim in [his] Motion for Default Judgment and declines to find [Tropical Restaurant] liable for that claim." *Zabrodin v. Silk 222, Inc.*, 702 F. Supp. 3d 102, 121 (E.D.N.Y. 2023).

### 1.    FLSA and NYLL Violations

#### a.    Minimum Wage (Counts 1, 3)

Under the FLSA and the NYLL, "[a]n employer may not pay an employee less than the statutory minimum wage for each hour the employee worked in any week." *Pastrana v. Mr. Taco LLC*, No. 18-CV-9374 (GBD)(SN), 2022 WL 16857111, at *3 (S.D.N.Y. Sept. 23, 2022) (citing 29 U.S.C. § 206(a) and N.Y. Lab. Law § 652(1)), *adopted by* 2022 WL 16857107 (S.D.N.Y. Nov. 10, 2022), *abrogated on other grounds by Guthrie v. Rainbow Fencing Inc.*, 113 F.4th 300, 309–10 (2d Cir. 2024) ("*Guthrie III*").  "An employee bringing an action for unpaid minimum wages under the FLSA and the NYLL has the burden of proving that he performed work for which he was not properly compensated." *Fermin*, 93 F. Supp. 3d at 41 (cleaned up).  "A plaintiff may sufficiently establish FLSA or NYLL minimum wage violations through an affidavit or declaration stating the number of hours worked." *Brito*, 2022 WL 875099, at *10.  Additionally, "[i]n the context of a default and where Plaintiffs lack

access to the employment records necessary to prove they were not properly compensated, Plaintiffs may meet their burden of proof by relying on recollection alone." *Pastrana*, 2022 WL 16857111, at *5 (quoting *de Los Santos v. Marte Constr., Inc.*, No. 18-CV-10748 (PAE)(KHP), 2020 WL 8549054, at *5 (S.D.N.Y. Nov. 25, 2020), *adopted by* 2020 WL 8549055 (S.D.N.Y. Dec. 17, 2020)).

As an initial matter, the Court must determine the applicable minimum wage rates under state, local, and federal law because Plaintiff is entitled to recover the highest minimum wage rate available at any given period of his employment.  29 U.S.C. § 218(a); *Brito*, 2022 WL 875099, at *9.  Under New York law, the applicable minimum wage rate is determined by the size and location of the employer and the dates of the plaintiff's employment.  N.Y. Lab. Law § 652(1); 12 N.Y.C.R.R. § 146-1.2.  Plaintiff alleges that he was employed from "on or around March 2020 through and including February 28, 2023."  (Compl., ECF No. 1 ¶ 7.) While Plaintiff does not allege Tropical Restaurant's size or its number of employees, during this period, the NYLL minimum wage rate was $15.00 per hour for employers of any size located in New York City.  *See* N.Y. Lab. Law § 652(1)(a)(i)–(ii); 12 N.Y.C.R.R. § 146-1.2(a)(1)(i).  During this period, state and local minimum wage rate was higher than the federal minimum wage rate, and Plaintiff thus is entitled to compensation under the local minimum wage rate of $15.00 per hour.  *Compare* N.Y. Lab. Law § 652(1)(a) (after December 31, 2018, applicable New York City minimum wage rate of $15.00 per hour) *with* 29 U.S.C. § 206(a)(1) (federal minimum wage rate of $7.25 per hour after July 24, 2009).

Next, "for the purposes of determining whether Plaintiff was paid the prevailing minimum wage, the Court must determine his regular hourly rate of pay." *Ms. Wine Shop*, 643 F. Supp. 3d at 371 (cleaned up).  Under the NYLL, the regular rate of pay for hospitality

industry employees[8] "shall mean the amount that the employee is regularly paid for each hour of work, before subtracting a tip credit, if any." 12 N.Y.C.R.R. § 146-3.5(a). "If an employer fails to pay an employee an hourly rate of pay, the employee's regular hourly rate of pay shall be calculated by dividing the employee's total weekly earnings, not including exclusions from the regular rate, by the lesser of 40 hours or the actual number of hours worked by that employee during the work week." *Id.* § 146-3.5(b).

Plaintiff alleges that he was paid a fixed salary of $40 per day for working four to six days per week and 11 or 12 hours per day, for "a total period of approximately 44 to 72 hours" each week. (Compl., ECF No. 1 ¶¶ 46–47.) To calculate Plaintiff's regular hourly rate, the Court must determine and divide Plaintiff's "total weekly earnings" by the "actual number of hours worked by [Plaintiff] during a work week." *See* 12 N.Y.C.R.R. § 146-3.5(b). *First*, Plaintiff's total weekly earnings was $200 because Plaintiff worked "four to six days per week," or an average of five days per week, and was paid $40 per day (*i.e.* 5 days per week x $40 per day = $200). *Second*, when a plaintiff alleges "a range of weekly hours worked, the [actual] number of hours worked is calculated based upon the midpoint." *Rodriguez v. Solares Corp.*, No. 16-CV-3922 (CBA)(SMG), 2018 WL 7252949, at *6 n.3 (E.D.N.Y. Aug. 14, 2018), *adopted by*, 2019 WL 486883 (E.D.N.Y. Feb. 7, 2019). Therefore, Plaintiff worked 58 hours weekly (*i.e.*, the midpoint between 44 and 72 hours). (*See* Damages Chart, ECF No. 22-1 at 3.) By dividing the total weekly earnings by the actual number of hours worked weekly, the Court determines Plaintiff's regular hourly rate to be $3.45 (*i.e.*, $200 weekly earnings / 58 hours). Thus, for the entirety of Plaintiff's employment period, his hourly pay rate was

---

[8] The term "hospitality industry" includes any restaurant or hotel. 12 N.Y.C.R.R. § 146-3.1.

well below the applicable minimum wage rate of $15.00.  *See* N.Y. Lab. Law § 652(1)(a).

Accordingly, the Court respectfully recommends that Tropical Restaurant should be liable for

violating the FLSA's and NYLL's minimum wage provisions.

### b.      Overtime Wage (Counts 2, 4)

The FLSA requires that "'for a workweek longer than forty hours,' an employee

working 'in excess of' forty hours shall be compensated for those excess hours 'at a rate not

less than one and one-half times the regular rate at which [she or] he is employed.'"  *Dejesus*,

726 F.3d at 88 (quoting 29 U.S.C. § 207(a)).  The NYLL includes the same requirement,

providing that eight hours constitutes a "legal day's work."  N.Y. Lab. Law § 160.  For

hospitality workers, "[a]n employer shall pay an employee for overtime at a wage rate of 1 1/2

times the employee's regular rate for hours worked in excess of 40 hours in one workweek."

12 N.Y.C.R.R. § 146-1.4.  "[I]n order to state a plausible FLSA overtime claim, a plaintiff

must sufficiently allege 40 hours of work in a given workweek as well as some uncompensated

time in excess of the 40 hours."  *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d

106, 114 (2d Cir. 2013).  "Plaintiffs must provide sufficient detail about the length and

frequency of their unpaid work to support a reasonable inference that they worked more than

forty hours in a given week."  *Nakahata v. New York-Presbyterian Health Care Sys., Inc.*, 723

F.3d 192, 201 (2d Cir. 2013).

Plaintiff sufficiently establishes that Tropical Restaurant failed to pay him the requisite

overtime pay.  Plaintiff alleges that while he "was required to work in excess of forty (40)

hours per week," he "never received an overtime premium of one and one-half times his regular

rate of pay for those hours," and he was paid a "fixed salary of $40 per day," regardless of the

number of hours he worked that day.  (Compl., ECF No. 1 ¶¶ 47, 55.)  Plaintiff specifies that

throughout his employment, he worked "four (4) to six (6) days per week: from approximately 12:00 p.m. to 11:00 p.m. or 12:00 a.m. (i.e., 11 or 12 hours per day) for a total period of approximately 44 to 72 hours during each of the weeks, respectively." (*Id.* ¶ 46.)  The Court therefore respectfully recommends that Tropical Restaurant should be liable for failure to pay overtime under both the FLSA and NYLL.

### 2. NYLL Violations

#### a. Spread of Hours Pay (Count 5)

For hospitality workers like Plaintiff, the NYLL's regulations also require that "[o]n each day on which the spread of hours exceeds 10, an employee shall receive one additional hour of pay at the basic minimum hourly rate." 12 N.Y.C.R.R. § 146-1.6(a).  The "spread of hours" is the length of time between the beginning and end of an employee's workday and includes "working time plus time off for meals plus intervals off duty." *Id.* § 146-1.6.  A plaintiff sufficiently establishes an employer's liability for failure to provide spread of hours pay when he alleges that he worked in "excess of ten hours on a given day" but did not receive spread of hours pay. *Ms. Wine Shop*, 643 F. Supp. 3d at 371.  "A limitation upon a plaintiff's eligibility to recover for spread-of-hours is that the plaintiff [may] not earn more than the minimum wage." *Fermin*, 93 F. Supp. 3d at 45 (cleaned up).

Here, Plaintiff establishes that Tropical Restaurant failed to pay him the requisite spread of hours pay.  Plaintiff alleges that on each workday, he worked 11 or 12 hours per day without any meal breaks or rest periods, that he received a fixed salary of $40 per day, and that he was not paid an additional hour for those days.  (Compl., ECF No. 1 ¶¶ 46–47, 57–58, 90.)  The Court already established that Plaintiff did not earn more than the minimum wage.  (*See*

§ VI.D.1.a., *supra*.)  The Court respectfully recommends that, based on Plaintiff's undisputed allegations, Tropical Restaurant should be liable for unpaid spread of hours pay.

### b.   Tip Retention (Count 8)

Under the NYLL, "[n]o employer . . . shall demand or accept, directly or indirectly, any part of the gratuities, received by an employee, or retain any part of a gratuity or of any charge purported to be a gratuity for an employee."  N.Y. Lab. Law § 196-d.  However, "[n]othing in this subdivision shall be construed as affecting . . . the sharing of tips by a waiter with a busboy or similar employee."  *Id.*  "'By its plain terms, § 196-d bars employers from requiring tipped employees to share tips with employees who do not perform direct customer service, *i.e.*, employees who are not 'busboy[s] or similar employee[s]' and employees who are managers or 'agent[s]' of the employer.'"  *Barenboim v. Starbucks Corp.*, 698 F.3d 104, 109 (2d Cir. 2012) (quoting *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 240 (2d Cir. 2011)), *certified question accepted*, 20 N.Y.3d 914 (2012), *and certified question answered*, 21 N.Y.3d 460, (2013); *see also* 12 N.Y.C.R.R. § 146-2.14(e) (listing tip-eligible occupations including wait staff and bartenders).  If an employer implements a tip sharing or tip pooling system,[9] it must establish, maintain, and preserve for at least six years records which include: (1) a daily log of tips collected by each employee on each shift; (2) a list of eligible occupations to receive shared tips; (3) the shares of tips that each occupation is scheduled to receive; and

---

[9] "Tip sharing" is the practice by which an employee who receives tips directly from customers gives a portion of their tips to another service employee or food service worker who participated in providing service to customers and keeps the balance.  12 N.Y.C.R.R. § 146-2.14(a).  "Tip pooling is the practice by which the tip earnings of directly tipped employees are intermingled in a common pool and then redistributed among directly and indirectly tipped employees."  *Id.* § 146-2.14(b).

(4) the amount in tips that each employee receives from the tip share or tip pool, by date.  12 N.Y.C.R.R. § 146.-2.17(a).  These records must be regularly made available for participants in the tip sharing or tip pooling systems to review.  *Id.* § 146.-2.17(b).

Plaintiff has sufficiently alleged that Tropical Restaurant improperly withheld his tips. *First*, Plaintiff alleges that he was employed as a "waiter, bartender, busboy, and general worker" (Compl., ECF No. 1 ¶ 6), which are specified in the NYLL regulations as examples of occupations eligible to receive tips.  12 N.Y.C.R.R. § 146-2.14(e); *see Fermin*, 93 F. Supp. 3d at 39 (construing waiter as a "customarily tipped employee").  He further alleges that Tropical Restaurant "imposed" an "employer-mandated tip sharing scheme" without any notice.  (Compl., ECF No. 1 ¶¶ 51, 54.)  Specifically, Tropical Restaurant required Plaintiff to distribute a percentage of all gratuities to ineligible "non-tipped employees, *i.e.* [Tropical Restaurant's] managers," who were not entitled to a share of his tips.  (*Id.* ¶¶ 49–50.) Moreover, Plaintiff states that Tropical Restaurant did not establish, maintain, and preserve the required records listed in the NYLL regulations or make them available to review.  (*Id.* ¶ 53.)

Accordingly, the Court respectfully recommends that Tropical Restaurant should be liable for unlawfully withholding Plaintiff's tips.

### c.     Wage Notice and Wage Statement (Counts 6, 7)

Pursuant to the New York Wage Theft Protection Act ("WTPA"), an employer must provide its employees, at the time of hiring, a written notice containing, *inter alia*, "the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances;" "the regular pay day designated by the employer;" and the

employer's address and telephone number.  N.Y. Lab. Law § 195-1(a).  The WTPA also requires employers to "provide employees with 'a statement with every payment of wages,' listing various information including the dates of work covered by the payment, information identifying the employer and employee, details regarding the rate of pay and the overtime rate of pay, and the number of hours worked."  *Perry*, 2022 WL 1018791, at *8 (quoting N.Y. Lab. Law § 195-3).

"The Supreme Court recently held that a technical violation triggering a statutory damage award only confers Article III standing if the plaintiff demonstrates an actual and concrete injury resulting from that violation."  *Guthrie v. Rainbow Fencing Inc*., No. 21-CV-5929 (KAM)(RML), 2022 WL 18999832, at *6 (E.D.N.Y. Dec. 13, 2022) (*"Guthrie I"*) (citing *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021)), *adopted as modified*, 2023 WL 2206568 (E.D.N.Y. Feb. 24, 2023)) (*"Guthrie II"*), *aff'd*, *Guthrie III*, 113 F.4th at 310–11.  "To establish [Article III] standing, a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief."  *TransUnion*, 594 U.S. at 423 (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)).  To demonstrate an injury in fact, a plaintiff "must show the invasion of a [1] legally protected interest that is [2] concrete and [3] particularized and [4] actual or imminent, not conjectural or hypothetical."  *Maddox v. Bank of N.Y. Mellon Tr. Co., N.A*., 19 F.4th 58, 62 (2d Cir. 2021) (cleaned up).

Recently, the Second Circuit held that "a plaintiff must show some causal connection between the lack of accurate notices and the downstream harm" to plausibly allege a WTPA violation.  *Guthrie III*, 113 F.4th at 308.  Analyzing *TransUnion*, the Second Circuit noted that

the Supreme Court rejected the concept of purely "informational injury" and clarified that "[a]n

'asserted informational injury that causes no adverse effects cannot satisfy Article III.'"

*Guthrie III*, 113 F.4th at 307 (quoting *TransUnion*, 594 U.S. at 442, which in turn quotes

*Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990, 1004 (11th Cir. 2020)).

> A plaintiff-employee *may* have suffered an injury-in-fact sufficient to establish standing when, for example, inaccurate or noncompliant notices prevented the employee from obtaining full payment of wages in a timely fashion.  But the plaintiff-employee cannot "assume[ ] [t]his conclusion without analysis" or rely on "speculation and conjecture." . . . Rather, the plaintiff-employee must support a plausible "theory as to *how* he was injured by [the] defendants' failure to provide the required documents."

*Guthrie III*, 113 F.4th at 309 (quoting *Quieju v. La Jugueria Inc.*, No. 23-CV-264 (BMC),

2023 WL 3073518, at *2 (E.D.N.Y. Apr. 25, 2023)).

Here, the well-pleaded allegations of the Complaint establish that Tropical Restaurant's

failure to provide hiring notices and wage statements to Plaintiff caused him a tangible injury.

*Guthrie II*, 2023 WL 2206568, at *6.  Plaintiff alleges the following: (1) "[Tropical Restaurant]

did not provide Plaintiff a statement of wages, as required by NYLL § 195(3)"; (2) "[Tropical

Restaurant] did not give any notice to Plaintiff, in Spanish (Plaintiff's primary language) of

Plaintiff's rate of pay, employer's regular pay day, and such other information as required by

NYLL 195(1)"; (3) Tropical Restaurant's alleged failure to provide wage notices and wage

statements  "denied [him his] statutory right to receive true and accurate information about the

nature of [his] employment and related compensation policies"; and (4) "the breach of

obligations injured [him] by denying him the right to know the conditions of his compensation

and resulted in the underpayment of wages[.]"  (Compl., ECF No. 1 ¶¶ 61–64.)[10]  Plaintiff

sufficiently establishes Article III standing when he alleges that the denial of the statutory right

to wage notices and wage statements ultimately resulted in underpayment.  *See Guthrie III*,

113 F.4th at 309–10 (citing *Harty v. W. Point Realty, Inc.*, 28 F.4th 435, 444 (2d Cir. 2022))

("a plaintiff-employee who has plausibly shown that defective notices led him or her to lose

wages has . . . a concrete interest" sufficient to establish standing); *see also*, *e.g.*, *Stih v.

Rockaway Farmers Mkt., Inc.*, No. 22-CV-3228 (ARR)(RER), 2023 WL 2760492, at *7

(E.D.N.Y. Apr. 3, 2023) (plaintiff alleged that failure to provide him with proper wage notices

injured him by "denying him the right to be adequately apprised of the terms and conditions

of his employment," including allowances defendants purported to claim against his salary).

The Court thus respectfully recommends that Tropical Restaurant should be liable for

violations of the NYLL's wage notice and wage statement provisions.

## VII.  **DAMAGES**

As Tropical Restaurant's liability has been established, the Court turns to evaluate

damages.  "While a party's default is deemed to constitute a concession of all well pleaded

allegations of liability, it is not considered an admission of damages."  *Bricklayers*, 779 F.3d

at 189 (cleaned up).  "On a motion for default judgment, a plaintiff has the burden to prove

damages to the Court with a 'reasonable certainty.'"  *Ramah v. 138 Hillside Ave Inc.*, No. 20-

CV-3317 (LDH)(LB), 2021 WL 7906551, at *4 (E.D.N.Y. Aug. 24, 2021) (quoting *Credit

Lyonnais Secs. (USA), Inc. v. Alcantra*, 183 F.3d 151, 155 (2d Cir. 1999)), *adopted by* Order

---

[10] In his sworn affidavit in support of the motion, Plaintiff includes similar statements.  (Pl. Rev. Aff., ECF No. 28-1 ¶¶ 14–17.)

Adopting R. & R., *Ramah v. 138 Hillside Ave Inc.*, No. 20-CV-3317 (LDH)(LB) (E.D.N.Y. Sept. 16, 2021).

"That being said, because under [the] FLSA 'the burden is on an employer properly to record hours,' a 'plaintiff need not compute FLSA damages with precision.'" *Lopez v. Royal Thai Plus*, *LLC*, No. 16-CV-4028 (NGG)(SJB), 2018 WL 1770660, at \*9 (E.D.N.Y. Feb. 6, 2018) (quoting *Harold Levinson Assocs., Inc. v. Chao*, 37 F. App'x 19, 20–21 (2d Cir. 2002)), *adopted by* 2018 WL 1770555 (E.D.N.Y. Apr. 12, 2018). "Under the FLSA framework, if an employer fails to keep records of work performed, a court may then award damages to the employee, even though the result may be only approximate." *Brito*, 2022 WL 875099, at \*15; *see also Perry*, 2022 WL 1018791, at \*3 ("In the context of a motion for default judgment on FLSA and NYLL claims, the plaintiff's recollection and estimates of hours worked are presumed to be correct.") (cleaned up).

Where a plaintiff has sufficiently established claims under the FLSA and NYLL, that plaintiff is "not entitled to recover under both FLSA and NYLL for [backpay] earned over the same period." *Lopez*, 2018 WL 1770660, at \*10. Rather, "[a] plaintiff may recover under the statute which provides the greatest amount of damages." *Brito*, 2022 WL 875099, at \*9. Because the NYLL provides greater or equal recovery than the FLSA at all relevant times during Plaintiff's employment with Tropical Restaurant, the Court will apply the NYLL for all damages calculations.

As described below, Plaintiff seeks damages for unpaid minimum wage; unpaid overtime wage; misappropriated tips; spread of hours pay; liquidated damages; pre-judgment interest; attorneys' fees; costs; and post-judgment interest. (Mem., ECF No. 21 at 17–23.) Plaintiff requests $168,325.71 in unpaid wages, but does not specify the exact amount he is

owed for unpaid minimum wages, overtime wages, tips, and spread of hours pay.  (*See* Mem., ECF No. 21 at 21; Mizrahi Decl., Ex. A (Damages Chart), ECF No. 22-1 at 3; Proposed Order, ECF No. 22-6 at 5.)  The Court will address each category of damages in turn and will include Plaintiff's specific requested amounts, if any.

### A.   Minimum Wage

The Court has already determined that Plaintiff was entitled to a minimum wage of $15.00 per hour during his employment and that his actual regular pay rate was only $3.45 per hour.  (*See* § VI.D.1.a., *supra*.)  To calculate the minimum wage damages, the Court determines the difference between the plaintiff's regular rate of pay and the minimum wage, multiplied by the number of regular rate hours worked per week, and multiplied by the number of weeks during the relevant time period.

Throughout Plaintiff's employment from March 2020 through February 28, 2023, which spanned 156 weeks total, Plaintiff worked for an average of 58 hours per week. (Compl., ECF No. 1 ¶ 46; Damages Chart, ECF No. 22-1 at 3.)  Plaintiff was paid $3.45 per hour.  (*See* § VI.D.1.a., *supra*.)  Using the formula described above, Plaintiff is entitled to $72,072.00 of unpaid minimum wage (*i.e.*, (($15.00 – $3.45) × 40 regular hours per week) × 156 weeks).

Therefore, the Court respectfully recommends that Plaintiff should be awarded **$72,072.00** for unpaid minimum wages.

### B.   Overtime Wages

As noted, "[u]nder both the FLSA and NYLL, plaintiffs are entitled to overtime compensation of at least one and one-half times their regular hourly rate" for hours worked in excess of 40 hours per week.  *Brito*, 2022 WL 875099, at *16; *Dejesus,* 726 F.3d at 88; 29

U.S.C. § 207(a)(1); 12 N.Y.C.R.R. § 142-2.2. "Where a plaintiff is 'compensated below the statutory minimum wage under either [the FLSA or NYLL], the overtime fifty-percent premium is calculated based upon the applicable minimum wage not the plaintiff's actual pay rate.'" *Brito*, 2022 WL 875099, at *16 (quoting *Guardado v. 13 Wall St., Inc.*, No. 15-CV-02482 (DRH)(SIL), 2016 WL 7480358, at *10 (E.D.N.Y. Dec. 2, 2016), *adopted by* 2016 WL 7480363 (E.D.N.Y. Dec. 29, 2016)).

Plaintiff is entitled to one- and one-half times his regular rate of pay based on the applicable New York City minimum wage of $15.00 per hour, or $22.50 per hour for hours exceeding 40 per week (*i.e.*, $15.00 New York City minimum wage x 1.5). Because "Plaintiff has already been paid a weekly amount for these [overtime] hours, the overtime wage deficiency is calculated by multiplying the difference between the paid rate and the overtime wage rate (minimum wage times 1.5) by the total number of overtime hours worked." *Ms. Wine Shop*, 643 F. Supp. 3d at 377. Between March 2020 and February 28, 2023, Plaintiff worked, on average, 58 hours per week for a salary of $200 per week. (*See* § VI.D.1.a, *supra*; Compl., ECF No. 1 ¶ 46; Pl. Rev. Aff., ECF No. 28-1 ¶ 7.) Accordingly, the Court finds that Plaintiff worked 18 hours of overtime per week (*i.e.*, 58 hours – 40 hours). The Court calculates the difference between the regular pay rate and the overtime hourly rate, multiplied by the number of overtime hours worked per week, and multiplied by the number of weeks during the relevant time period. Applying this formula, Plaintiff is entitled to the total unpaid overtime wage of $53,492.40 (*i.e.*, (($22.50 − $3.45) × 18 overtime hours per week) × 156 weeks).

Accordingly, the Court respectfully recommends Plaintiff should be awarded a total of **$53,492.40** in unpaid overtime wages.

### C. Tip Retention

Plaintiff is entitled to the tips that Tropical Restaurant unlawfully withheld and the Court may accept Plaintiff's estimates regarding the amount he is owed. *See, e.g.*, *Zabrodin*, 702 F. Supp. 3d at 123. Plaintiff estimates that, "based on [his] experience working at Tropical Restaurant, that Defendants unlawfully misappropriated an average of about $200 in gratuities, per week." (Pl. Rev. Aff., ECF No. 28-1 ¶ 11.) Plaintiff's damages chart shows that he is seeking the $200 of misappropriated tips from March 2020 through February 28, 2023, or all 156 weeks of employment. Therefore, Plaintiff is entitled to $31,200 in misappropriated tips (*i.e.*, $200 per week x 156 weeks).

Accordingly, the Court respectfully recommends that Plaintiff should be awarded **$31,200** in tips withheld.

### D. Spread of Hours Pay

According to Plaintiff's damages chart, Plaintiff seeks $75.00 of unpaid spread of hours compensation per week for all 156 weeks worked. (*See* Damages Chart, ECF No. 22-1 at 3.)

Under the NYLL, an employee is entitled to recover compensation for an extra hour of work at the minimum wage for each day that the employee works in excess of ten hours. *Perez v. E.P.E. Enter. Corp.*, No. 22-CV-6353 (DG)(RER), 2023 WL 7000934, at *5 (E.D.N.Y. Aug. 29, 2023) ("*E.P.E. Enter. Corp.*"), *adopted by* Order Adopting R. & R., *Perez v. E.P.E. Enter. Corp.*, No. 22-CV-6353 (DG)(RER) (E.D.N.Y. Oct. 17, 2023); 12 N.Y.C.R.R. § 142-1.6(a). Like unpaid overtime wages, spread of hours damages are calculated based on the applicable minimum wage rates for the relevant time period. *Esquivel*, 2023 WL 6338666, at *13.

From March 1, 2020 through February 28, 2023, Plaintiff alleges that he worked "four (4) to six (6) days per week" for "11 or 12 hours per day" without rest breaks and without any

spread of hours pay.  (Compl., ECF No. 1 ¶ 46; Pl. Rev. Aff., ECF No. 28-1 ¶ 7.)  Therefore, Plaintiff is entitled to unpaid spread of hours pay for one hour per workday per week (*i.e.*, ($15.00 x 5 days) x 156 weeks = $11,700).  While Plaintiff does not show the calculation for spread of hours pay owed total, these values are the same as listed on Plaintiff's damages chart. (Damages Chart, ECF No. 22-1 at 3.)

Accordingly, the Court respectfully recommends that Plaintiff should be awarded **$11,700** in unpaid spread of hours premium pay.

### E.    Liquidated Damages

Plaintiff seeks $168,325.71 in liquidated damages.  (Damages Chart, ECF No. 22-1 at 3; Proposed Order, ECF No. 22-6 at 6.)

"Under both the FLSA and NYLL, an employee may recover liquidated damages equal to the amount owed for unpaid overtime [and minimum wage] compensation, unless the employer proves a good faith basis for believing that its underpayment of wages was in compliance with the law."  *Perry*, 2022 WL 1018791, at *11 (citing 29 U.S.C. §§ 216(b), 260; N.Y. Lab. Law § 198(1-a)).  "Plaintiff[] may not, however, recover 'duplicative liquidated damages for the same course of conduct' under both the FLSA and NYLL."  *Pastrana*, 2022 WL 16857111, at *10 (quoting *Rana v. Islam*, 887 F.3d 118, 123 (2d Cir. 2018)).  "In cases where plaintiffs could obtain liquidated damages under either FLSA [or] NYLL, the trend has been to award liquidated damages under whichever statute provides the greater potential recovery."  *Payamps*, 2019 WL 8381264, at *13.  Here, where Tropical Restaurant defaulted and therefore make no showing that it acted in good faith when it underpaid Plaintiff, the greater liquidated damages available under the NYLL are appropriate.  Accordingly, the Court

respectfully recommends that Plaintiff should be awarded an additional **$168,464.40** in liquidated damages under the NYLL only.[11]

### F.    Wage Notice and Wage Statements

Plaintiff seeks $5,000 for Tropical Restaurant's failure to provide wage notices pursuant to NYLL § 195(1) and $5,000 for its failure to provide wage statements pursuant to NYLL § 195(3).  (Damages Chart, ECF No. 22-1 at 3.)

The penalty for failing to provide a wage notice is $50 per day, up to $5,000 (*i.e.*, 100 days), and the penalty for failing to provide wage statements is $250 per day, up to $5,000 (*i.e.*, 20 days).  *Cuchimaque v. A. Ochoa Concrete Corp.*, No. 22-CV-6136 (RPK)(RML), 2023 WL 5152336, at *6 (E.D.N.Y. July 18, 2023) (citing N.Y. Lab. Law §§ 198(1-b) & 198(1-d)), *adopted by* 2023 WL 9104384 (E.D.N.Y. Aug. 23, 2023).  As alleged, Plaintiff worked for more than 100 days without receiving wage notices and worked more than 20 days without receiving wage statements.  (Compl., ECF No. 1 ¶ 44.)  Plaintiff thus is entitled to the maximum statutory damages of $5,000 for violations of NYLL § 195(1), and $5,000 for violations of NYLL § 195(3).  Therefore, the Court respectfully recommends that Plaintiff should be awarded **$10,000** for violations of NYLL §§ 195(1) and 195(3).

### G.    Pre-judgment Interest

Plaintiff requests that prejudgment interest at a daily rate of $41.50 from August 30, 2023 until judgment is entered.  (Mem., ECF No. 21 at 20–21.)

---

[11] The total includes $72,072.00 for unpaid minimum wage pay, $53,492.40 for unpaid overtime wage pay, $31,200 in misappropriated tips, and $11,700 for unpaid spread of hours premium pay. (*See* §§ VII.A.–D., *supra*.)  Because Plaintiff does not explain his calculations, the Court relies on the analysis above to determine 100% of the total amount of the wages found to be due.  *See* N.Y. Lab. Law § 198(1-a).

"It is well settled that in an action for violations of the FLSA prejudgment interest may not be awarded in addition to liquidated damages." *Fermin*, 93 F. Supp. 3d at 48 (cleaned up); *see also Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1064 (2d Cir. 1988). In contrast, the NYLL enables a plaintiff to recover both liquidated damages and prejudgment interest. *See Fermin*, 93 F. Supp. 3d at 48. Accordingly, Plaintiff is eligible to recover prejudgment interest on compensatory damages for unpaid wages available under the NYLL at 9% per annum. *See id.* at 49–50; N.Y. C.P.L.R. § 5004; *Burns v. Scott*, 635 F. Supp. 3d 258, 282 (S.D.N.Y. 2022), *recons. denied*, No. 20-CV-10518 (JGK), 2022 WL 18858909 (S.D.N.Y. Nov. 9, 2022) ("Prejudgment interest applies only to the amount of compensatory damages, and excludes the amount of liquidated damages.") (citing *Maldonado v. La Nueva Rampa, Inc.*, No. 10-CV-8195 (LLS)(JLC), 2012 WL 1669341, at *11 (S.D.N.Y. May 14, 2012)); *see also Avedana*, 2021 WL 4255361, at *12 (applying prejudgment interest rate to NYLL claims).

When damages "were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date." N.Y. C.P.L.R. § 5001(b). Courts applying N.Y. C.P.L.R. § 5001 have "wide discretion in determining a reasonable date from which to award pre-judgment interest[.]" *Fermin*, 93 F. Supp. 3d at 49. Courts generally calculate prejudgment interest in NYLL "from the midpoint date of the claims through the date judgment is entered" as well as from "the midpoint between the first and last dates of the plaintiff's NYLL claims." *Perry*, 2022 WL 1018791, at *13; *Pastrana*, 2022 WL 16857111, at *10; *Ms. Wine Shop*, 643 F. Supp. 3d at 380.

As discussed, the Court recommends that liquidated damages should be awarded under the NYLL, and thus, pre-judgment interest may be awarded. (*See* § VII.E., *supra*.) The Court

calculates prejudgment interest by determining the midpoint of the relevant period. The Court selects August 30, 2021, the midpoint between the date Plaintiff's employment began and thus when claims start accruing (March 1, 2020) and Plaintiff's end date of employment (February 28, 2023), as a reasonable intermediate date. Applying a nine percent per annum rate, the Court respectfully recommends that Plaintiff should be awarded **$46,358.64**[12] in prejudgment interest from August 30, 2021 to September 19, 2024, the date of this Report and Recommendation. This amount will increase by $41.54 per day until the entry of judgment.

### H.    Attorneys' Fees

Plaintiff seeks $8,593.00 in attorneys' fees based on 28.16 hours of work for his counsel Levin-Epstein & Associates, P.C. (Mem., ECF No. 21 at 23; Proposed Order, ECF No. 22-6 at 6; *see generally* Mizrahi Decl. Ex. B (Billing Records), ECF No. 22-2.)

"Both the FLSA and NYLL are fee-shifting statutes which entitle a plaintiff to an award of reasonable attorney's fees and costs in wage-and-hour actions." *Callari v. Blackman Plumbing Supply, Inc.*, No. 11-CV-3655 (ADS)(AKT), 2020 WL 2771008, at *6 (E.D.N.Y. May 4, 2020), *adopted by* 2020 WL 2769266 (E.D.N.Y. May 28, 2020). "District courts have broad discretion to determine the amount of attorneys' fees awarded, and the party requesting fees must submit documentation to support its request." *Perry*, 2022 WL 1018791, at *14.

"The starting point for determining the presumptively reasonable fee award is the lodestar amount, which is the product of a reasonable hourly rate and the reasonable number of hours required by the case." *Esquivel v. Lima Rest. Corp.*, 2023 WL 6338666, at *16. "To

---

[12] The Court calculates the daily prejudgment interest rate by multiplying the total amount of unpaid wages ($168,464.40) by 9%, then dividing by 365, for a daily rate of $41.54. The daily rate is then multiplied by the number of days between August 30, 2021, and September 19, 2024 (1,116 days).

determine a reasonable hourly rate, courts consider market rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Id.* (cleaned up). "Courts in the Eastern District have recently awarded hourly rates ranging from $300 to $450 for partners, $200 to $325 for senior associates, $100 to $200 for junior associates, and $70 to $100 for legal support staff in FLSA cases." *Morales v. Los Cafetales Rest. Corp.*, No. 21-CV-1868 (AMD)(RER), 2023 WL 7684775, at *7 (E.D.N.Y. Oct. 12, 2023), *adopted by* 2023 WL 8021460 (E.D.N.Y. Nov. 20, 2023). "If the Court finds that some of the time the attorney billed was not reasonably necessary, it should reduce the time for which compensation is awarded accordingly." *Perry*, 2022 WL 1018791, at *14 (cleaned up). "The applicant bears the burden to demonstrate reasonableness." *Sadowski v. Yeshiva World News, LLC*, No. 21-CV-7207 (AMD)(MMH), 2023 WL 2707096, at *8 (E.D.N.Y. Mar. 16, 2023), *adopted by* 2023 WL 2742157 (E.D.N.Y. Mar. 31, 2023).

### 1.      Hourly Rate

Plaintiff requests an hourly rate of $500 for attorney Joshua D. Levin-Epstein and $350 for attorney Eunon Jason Mizrahi. (Mem., ECF No. 21 at 22.) As an initial matter, the Court need not assess the reasonableness of the hourly rate for Mr. Levin-Epstein because the submitted billing records submitted do not contain any hours billed for this attorney. (*See generally* Billing Records, ECF No. 22-2 at 2.) Because Mr. Levin-Epstein did not do any work on this case, his billing rate is not relevant, and he will not be awarded any fees.[13]

---

[13] The Court notes that this is not the first time Plaintiff's counsel has submitted information about Mr. Levin-Epstein's hourly billing rate when the underlying billing records do not show that Mr. Levin-Epstein completed any work in the case. *See, e.g.*, *Proano v. Melrose Home Improvement Corp.*, No. 22-CV-6050 (KAM)(JAM), 2023 WL 8003303, at *11 (E.D.N.Y. Nov. 17, 2023); *Zabrodin*, 702 F. Supp. 3d at 124. When seeking attorneys' fees, counsel shall refrain from including unnecessary information about attorneys who have not worked on the case.

As for Mr. Mizrahi, the billing records show that he performed work based on his hourly rate of $350, which he claims was "the standard rate for wage and hour matters" at the time Plaintiff signed an engagement agreement with the firm.  (Mizrahi Decl., ECF No. 22 ¶ 7.)  Mr. Mizrahi is a 2016 law school graduate and associate specializing in labor and employment law and worked previously as In-House Counsel and Human Resources Manager for a wholesale baking company.  (*Id.*)  Courts have rejected Mr. Mizrahi's requested hourly rate of $350 because it is "at the high end of what courts in this district generally award for work by senior associates in FLSA and NYLL cases" and because of his past conduct in those respective cases.  *See, e.g.*, *Zabrodin*, 2023 WL 8009319, at *14 (reducing Mr. Mizrahi's hourly rate to $200, the "low end of what courts in this district typically award for work by senior associates," in part due to the "numerous errors that needlessly delayed and complicated the Court's resolution" in the case); *see also Kennedy v. Imperial Sec. & Consultants LLC*, No. 23-CV-2790 (DLI)(LB), 2024 WL 3387261, at *7 (E.D.N.Y. May 1, 2024), *adopted by* Order Adopting R. & R., *Kennedy v. Imperial Sec. & Consultants LLC*, No. 23-CV-2790 (DLI)(LB) (E.D.N.Y. June 4, 2024) (pointing out numerous mistakes by Mr. Mizrahi in the case that would justify a reduction of his hourly rate).  Here, unlike those cases where the Court has noted that Mr. Mizrahi made errors that "needlessly complicated" the Court's resolution, the Court does not find that the motion papers filed in this case were *overly* deficient to cause needless delay to the Court.  Still, the requested hourly rate of $350 is higher than what the courts in this district find reasonable for a senior associate working in FLSA actions.  Therefore, the Court recommends that an hourly rate of $325, which is reasonable and within the range of awards for work by senior associates like Mr. Mizrahi.  *See, e.g.*, *Sims v. Crown Waste Corp.*, No. 22-CV-6047 (BMC), 2023 WL 363070, at *2 (E.D.N.Y. Jan. 23, 2023)

(awarding $325 per hour for Mr. Mizrahi); *see also Proano*, 2023 WL 8003303, at *12 ("Mr. Mizrahi's rate generally has been approved at $325 rather than the $350 that Plaintiffs seek in this case").

Finally, Plaintiff also requests an hourly rate of $50 for paralegal Alexis Abrego. (*See* Billing Records, ECF No. 22-2.) This hourly rate for Ms. Abrego is reasonable because it is below $70 to $100 per hour, the typical range of fee awards for legal support staff in wage and hour cases. *Morales*, 2023 WL 7684775, at *7.

## 2. Reasonable Hours Expended

The Court also finds that the number of hours expended in this case is reasonable for Mr. Mizrahi. According to the billing records, Mr. Mizrahi has expended a total of 23.95 hours on this case. (*See generally* Billing Records, ECF No. 22-2.) This total reflects the many tasks Mr. Mizrahi completed to prosecute the case, such as conducting client intake, drafting the summons and complaint, drafting certificate of default applications, drafting affidavits, drafting the motion for default judgment and the memorandum of law, and writing letters to the Court. (*Id.*) Further, after carefully reviewing the billing records, the Court does not find any particularly dubious or vague time entries.

The Court also finds the 4.21 hours expended by Ms. Abrego for paralegal services to be reasonable.[14] (Billing Records, ECF No. 22-2.) This number of hours is reasonable for services performed by Ms. Abrego, which included filing motions on the Court's ECF system, communicating with the client via email, and drafting documents. (*Id.*)

---

[14] The Court omits the three one-hour entries for process servers and filing fees, which are listed under Ms. Abrego's name but represent costs that are already accounted for in the requested costs. *See Proano*, 2023 WL 8003303, at *11 (omitting similar billing entries in Mr. Mizrahi's submission).

Accordingly, the Court respectfully recommends that Plaintiff should be awarded **$7,994.25** in attorneys' fees.[15]

### I.      Costs

Plaintiff seeks $697.20 in costs, including court filing and service of process.  (Mem., ECF No. 21 at 23; Proposed Order, ECF No. 22-6 at 6.)

Pursuant to both the FLSA and the NYLL, a prevailing plaintiff is entitled to an award of reasonable attorneys' fees and costs. 29 U.S.C. § 216(b); N.Y. Lab. Law § 663(1); *Avedana*, 2021 WL 4255361, at *13.  Plaintiff must provide sufficient documentary evidence to support an award of reasonable costs.  *Marine*, 2022 WL 17820084, at *11.

Here, Plaintiff submits a receipt reflecting $402 for the paid court filing fee, which the Court finds reasonable and substantiated.  (Mizrahi Decl. Ex. C (Costs), ECF No. 22-3 at 2.) Plaintiff further offers invoices showing the following charges for service of process: (1) $110.80 for service of process on Pesantez and 88-18 Tropical and (2) $184.40 for service of process on Illescas and Tropical Restaurant.  (*Id.* at 4–5.)  These costs correctly add up to the requested amount of $697.20.  Therefore, the Court finds these costs to be reasonable.

Accordingly, the Court respectfully recommends that Plaintiff should be awarded a total of **$697.20** in costs.

### J.      Post-Judgment Interest

Plaintiff requests post-judgment interest to be calculated from the date the Clerk of Court enters judgment in this action until the date of payment, at the rate set forth in 28 U.S.C. § 1961.  (Compl., ECF No. 1 ¶ 2.)  "[T]he award of post-judgment interest is mandatory on

---

[15] The attorneys' fees are calculated as follows: ($325 hourly rate x 23.95 hours) (Mr. Mizrahi) + ($50 hourly rate x 4.21 hours) (Ms. Abrego).

awards in civil cases as of the date judgment is entered." *Tru-Art Sign Co. v. Local 137 Sheet Metal Workers Int'l Ass'n*, 852 F.3d 217, 223 (2d Cir. 2017) (citing 28 U.S.C. § 1961). Accordingly, the Court recommends that Plaintiff should be granted post-judgment interest, to be calculated from the date the Clerk of Court enters judgment in this action until the date of payment, at the rate set forth in 28 U.S.C. § 1961.

## VIII.   <u>CONCLUSION</u>

For the foregoing reasons, the Court respectfully recommends that Plaintiff's motion for default judgment at ECF No. 20 should be **granted in part** as follows: (1) the Clerk of Court should enter the proposed default judgment (as amended)[16] against Defendant Tropical Restaurant Bar Inc. only; (2) Plaintiff should be awarded damages in the amount of **$401,978.90**, which includes: (a) **$72,072.00** for unpaid minimum wage pay; (b) **$53,492.40** for unpaid overtime wage pay; (c) **$31,200** in misappropriated tips; (d) **$11,700** for unpaid spread of hours premium pay; (e) **$168,464.40** in liquidated damages; (f) **$10,000** for wage notice and wage statement violation; (g) **$46,358.64** in pre-judgment interest to increase by $41.54 per day until the entry of judgment; (h) attorneys' fees of **$7,994.25**; (i) costs of **$697.20**; and (j) post-judgment interest at the rate set forth in 28 U.S.C. § 1961.  All other requests for relief against Defendants 88-18 Tropical Restaurante Corp., Jaime Antonio Pesantez, and Jaime Illescas (a/k/a Jimmy Illescas) should be **denied**.

---

[16] Plaintiff's proposed judgment (ECF No. 22-6) should be amended to reflect the damages recommendations herein.

A copy of this Report and Recommendation is being served on Plaintiff via ECF.  The Clerk of Court is respectfully directed to mail a copy of this Report and Recommendation to all Defendants at 88-18 Jamaica Avenue, Woodhaven, NY 11421.

Within 14 days of service, any party may serve and file specific written objections to this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  Any requests for an extension of time to file objections shall be directed to Judge Vitaliano.  If a party fails to object timely to this Report and Recommendation, it waives any right to further judicial review of this decision.  *See Miller v. Brightstar Asia, Ltd.*, 43 F.4th 112, 120 (2d Cir. 2022).

**SO ORDERED.**

Brooklyn, New York
September 19, 2024

/s/Marcia M. Henry
MARCIA M. HENRY
United States Magistrate Judge